UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JEFFREY ALLEN ROWE, | |
| Petitioner, | |
| v. | CAUSE NO. 3:21-CV-442-RLM-MGG |
| WARDEN, | |
| Respondent. | |

OPINION AND ORDER

Jeffrey Allen Rowe, a prisoner without a lawyer, filed an amended habeas corpus petition to challenge his conviction for burglary under Case No. 46D01-701-FA-10. Following a jury trial, on July 14, 2009, the LaPorte Superior Court resentenced Mr. Rowe as a habitual offender to seventy years of incarceration.

FACTUAL BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court of Appeals of Indiana summarized the evidence presented at trial:

> The facts favorable to the convictions are that in January 2007, seventy-three-year-old Robert Toutloff resided at the Normandy Village apartments. Toutloff became acquainted with Bobbi Jo Lewis approximately four or five months before the events in question when she knocked on his apartment door one day and asked him for money so she could buy milk for her little girl. Toutloff gave her some money. From that point on, according to Toutloff, the two became friends. Toutloff explained: "I kind of looked after her. I liked her. She was a nice person."

Lewis asked Toutloff for money "every two or three weeks, something like that", ostensibly for essential items such as diapers and milk. Eventually, Lewis began to steal money from Toutloff. She once stole $290 and he had her arrested. Toutloff estimated that Lewis stole money from him "half a dozen times." Nevertheless, Lewis continued to come around and Toutloff continued to give her money.

On the evening of January 21, 2007, Lewis was with Rowe, who was her boyfriend, and Jennifer Benson, who was her sister. The three were driving around in Lewis's father's car. After they purchased five dollars worth of gas, the group was out of money. With Rowe driving, they traveled to the Normandy Apartments, where a friend, Charles Everly, gave Lewis $20. Lewis bought crack cocaine with the money and the three smoked it. After that, Lewis told Rowe that Toutloff kept some money in his right front pocket. Aware that Lewis had gotten money from Toutloff in the past, Rowe put on a hooded sweatshirt, went to Toutloff's apartment, and knocked on his door. Inside, Toutloff was eating dinner when he heard the knock. He went to the door but did not see anyone through the peephole, so he returned to his meal. When he heard a second knock, he went to the door again and this time thought he saw a police officer outside the door, so he unlocked the deadbolt. At that moment, someone violently pushed the door open from the outside, knocking Toutloff to the floor on his back. The intruder jumped on top of Toutloff, straddling his stomach, and began punching Toutloff in the face and head. The man repeatedly demanded, "We know you've got money, where is it?" As the beating continued, Toutloff was eventually able to say, "In here", pointing to a single-drawer filing cabinet right next to them. Still lying on his back, Toutloff pulled the drawer open and took out a small leather shaving kit. The intruder took the shaving kit, opened it, and found approximately $70 inside. The intruder took out the money, got off of Toutloff, and fled from the apartment.

Toutloff called the police, who responded and took Toutloff's description of what had occurred. Toutloff was taken to the hospital, where it was determined that he had suffered cuts to his face and neck, a broken nose, and severe bruising on his torso. He remained in the hospital for three days.

Returning to Rowe, approximately five minutes after he had left Lewis and Benson in the parking lot, Rowe came running back to the car, jumped into the driver's seat, and "squealed out." Rowe's hands were bleeding from small cuts around his knuckles. He informed them, "I got it." He told the women that Toutloff did not have money in his pocket, but when Rowe punched him hard, "the dude told him it was in the cabinet

in a drawer." Rowe showed his companions the money he had taken from Toutloff. They traveled to a Family Express convenience store on Franklin Road, where Rowe purchased some cigarettes. After they left the store, Lewis called someone and arranged a drug purchase. A short time later, Rowe gave the drug source "about like $70, $80" in exchange for crack cocaine.

* * *

On January 30, 2007, Rowe was charged with robbery and burglary, both as class A felonies. On March 22, 2007, a count was added alleging that Rowe was a habitual offender. Following a jury trial, Rowe was convicted as charged and found to be a habitual offender. The court imposed concurrent, forty-year sentences for each of the class A felony convictions and enhanced the executed sentence by thirty years based upon the habitual offender finding. Thus, Rowe received a seventy-year executed sentence.

ECF 14-9 at 2-6; Rowe v. State, 905 N.E.2d 1102 (Ind. App. 2009).

In the amended petition, Mr. Rowe argues that he is entitled to habeas relief based on four separate claims on ineffective assistance of trial counsel. The Warden responds that Mr. Rowe has procedurally defaulted three of his claims by not fairly presenting the claims at each level of the state courts. Mr. Rowe concedes the procedurally defaulted nature of these claims in his traverse and asks to proceed solely on his claim that trial counsel provided ineffective assistance by not informing him of the prosecution's plea offer for a twenty-year sentence. Therefore, the court will consider only the claim that trial counsel erred with respect to communicating a plea offer.

STANDARD OF REVIEW

3

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Woods v. Donald, 135 S.Ct. 1372, 1376 (2015) (quotations and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Woods v. Donald, 135 S. Ct. at 1376 (quotation marks and citations omitted). Criminal defendants are entitled to a fair trial but not a perfect one. Rose v. Clark, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness

4

of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quotation marks omitted).

## DISCUSSION

Rowe argues that he is entitled to habeas relief because trial counsel didn't communicate a plea offer for a twenty-year sentence to him. To prevail on an ineffective assistance of counsel claim in the State courts, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668 (1984). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690–691.

The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." Id. at 693. In assessing prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." Harrington

5

v. Richter, 562 U.S. 86, 112 (2011). However, "[o]n habeas review, [the] inquiry is now whether the state court unreasonably applied Strickland." McNary v. Lemke, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." Id.

At the post-conviction hearing, Rowe proceeded without a lawyer, and trial counsel testified as follows:

> **Rowe:** While you were my attorney, did Deputy Prosecutor Atley Price ever offer you a plea?
>
> **Trial Counsel:** On the morning of trial.
>
> **Rowe:** On the morning of trial?
>
> **Trial Counsel:** I don't remember. And if it was, it was something you had rejected because of the amount of time. You wanted to go to trial.
>
> **Rowe:** Do you remember what any of the terms were for those plea agreements or plea agreement offer?
>
> **Trial Counsel:** The one made day of trial I do.
>
> **Rowe:** And what was it?
>
> **Trial Counsel:** Twenty years. I told you, and I told your dad.
>
> **Rowe:** How was it communicated to you?
>
> **Trial Counsel:** Verbally.
>
> **Rowe:** So there was no written letter ever?
>
> **Trial Counsel:** No. It was the morning that jury selection was to start. Mr. Price probably stated, why are we doing this, and offered 20 years. I said I will take it to you. I did. I explained to your dad what was, recommended to both of you that you take -- that it meant ten years of actual time. Your dad said it was your decision to make, and you chose to go to trial.

6

\* \* \*

**Rowe:** Are you concerned -- well, is there any possibility at all, from how overworked you were or -- well, not necessarily overworked -- but that you were working a lot of hours and you were running a campaign that you could have overlooked telling me about the plea bargain?

**Trial Counsel:** No. There's no way I would want to spend there days in a courtroom and probably 25 to 40 hours in preparation for something I could avoid as a public defender if a plea could be reached.

\* \* \*

**Rowe:** Did you have an understanding or an idea of what type of plea agreement that would likely result early on when you first took the case?

**Trial Counsel:** No. And one - if there was one, it was one you would not accept. Your attitude was not to accept a plea agreement.

**Rowe:** So if there are letters in [prior trial counsel's] case file where I was asking her to bring the plea agreement and where she acknowledged that I was asking her and refused, and I would have --

**Trial Counsel:** If you had that same offer and it would have been -- we would have been told it's not coming. With whatever offer you wanted and conveyed in writing to either [prior trial counsel] or myself, that offer would have been taken to Mr. Price, because I can't emphasize enough, I did not want to spend three days in a courtroom and 40 hours of my time preparing for your trial if I could avoid it.

**Rowe:** So at any time did you ever tell me that the only sort of plea agreement you could get me would be between 30 and 40 years in prison?

**Trial Counsel:** That's where Atley Price was talking until the day of trial because he, too, wanted to avoid doing it if he could. That's the nature of this business.

**Rowe:** If there's a letter from Atley Price address to you dated March 19, which was approximately two-and-a-half hours before trial that offered a 20-year plea bargain, would that -- the same 20-year plea bargain that --

7

**Trial Counsel:** That would surprise me, unless you -- again, it's been 10 or 11 years. Unless I took it to you and at that point you didn't want 20 years, and that could very well be that you didn't want 20 years.

\* \* \*

**State Attorney:** Let me show you this. Do you recognize that State's Exhibit AA, [trial counsel?

**Trial Counsel:** Okay. That would have been a letter Atley Price sent offering the 20.

**State Attorney:** Okay. And then this occurred back on March 10, 2008. Do you recall receiving that?

**Trial Counsel:** I'm sure I did.

**State Attorney:** Okay.

**Trial Counsel:** Well, I mean, I don't recall. I mean, how can I?

**State Attorney:** Yeah. I'm just saying you just said before you don't recall letters.

**Trial Counsel:** Right.

**State Attorney:** Now would you have conveyed this to Mr. Rowe?

**Trial Counsel:** Absolutely I would have.

**State Attorney:** And that would be based on the fact that you didn't want to be sitting in a trial for three days?

**Trial Counsel:** And his exposure.

**State Attorney:** And what was that exposure?

**Trial Counsel:** Well, I know for a fact the habitual would have added the consecutive sentence. Right. This was a FA. So he was offering -- he was offering a B felony conviction, I believe with 20.

**The Court:** No.

> **Trial Counsel:** No. The Class A -- 20. I knew what the range was if convicted plus the habitual in front of those. The Judge, I thought would sentence him accordingly, and I thought this exposure was so great that I would have recommended the 20 years.

ECF 17-2 at 115-20; 123-24.

> At the evidentiary hearing, Mr. Rowe testified as follows:

> My point though is that [trial counsel] never told me about the 20-year plea bargain that Mr. Price had. I learned about it through my father who had a conversation -- you know, according to his affidavit -- he had a conversation with [trial counsel] over the phone after I was tried and convicted, and my father told me that he had this conversation with Mr. Hofer and that Mr. Hofer said that I could have gotten less, and I was extremely upset because I would have accepted 20 years had he told me.

> Anyways, I thought I was facing 200 years. I have pretrial correspondence that, you know, I was wanting to negotiate a plea agreement. [Prior trial counsel], her letter clearly showed that she refused to relay -- you know, relay the message, and he verbally told me basically the same thing. So, I mean, I was basically prevented from pleading out in this case.

Id. at 88-89. Atley Price, the trial prosecutor, verified the plea offer letter. Id. at 60-70; ECF 17-3 at 53. He testified that he had no independent recollection of the offer but that he likely would have withdrawn the offer and would have made no further offers as they approached the trial date. Id. Mr. Rowe filed an affidavit from his father[1] that Mr. Rowe didn't tell him about any plea offers before trial and that, years after trial, trial counsel informed him of the plea offer for a twenty-year sentence. ECF 17-3 at 70-71. According to the affidavit, trial counsel told Mr. Rowe's father that he didn't tell Mr. Rowe about the offer because it was for a larger sentence than Mr. Rowe was willing to accept. Id. Mr. Rowe also filed a letter, dated August 2, 2007,

---

[1] According to Mr. Rowe, his father is now deceased. ECF 7-1 at 17.

from prior trial counsel in which she explained to him why she would not convey Mr. Rowe's offer of a twelve-year sentence to the prosecution. Id. at 7-8, 73-74.

The Indiana Court of Appeals rejected Mr. Rowe's claim, noting trial counsel's unequivocal testimony that he conveyed the plea offer to Mr. Rowe before trial and declined to reweigh the evidence for a credibility assessment. ECF 14-26. The appellate court noted that, while contemporaneous evidence indicated that Mr. Rowe would have accepted a twelve-year plea deal, that deal would have been significantly more advantageous than the prosecution's offer and did not "clearly contradict" the finding that Mr. Rowe rejected the offer. Id. The appellate court further noted that, while Prosecutor Price's testimony conflicted with trial counsel to some degree, he testified that he had no independent recollection and merely speculated as to what he likely would have done. Id. Additionally, the appellate court found that the LaPorte Circuit Court did not err by considering how Mr. Rowe's post-conviction testimony regarding the crime of his conviction conflicted with the trial evidence in assessing his credibility. Id.

The court cannot find that the Indiana courts made an unreasonable determination of fact. Trial counsel unequivocally testified that he conveyed the plea offer to Mr. Rowe before trial, and Mr. Rowe unequivocally testified that trial counsel didn't convey the plea offer to him until years after the trial. Mr. Rowe highlights valid reasons to question trial counsel's credibility, including trial counsel's ability to recall the relevant events, his interest in protecting his professional reputation, and contradictory testimony from the prosecutor. But the reasons to question Mr. Rowe's

credibility are equally valid -- Mr. Rowe has a considerable interest in reducing his term of incarceration, and, at the post-conviction stage, he presented a narrative that was both inconsistent with the evidence at trial and his previous narratives. ECF 17-2 at 89-92; ECF 21-5 at 142-43, 220-21; Trial Tr. 1-35, 111-32, 140-78. The record also contains substantial evidence suggesting that Mr. Rowe and his father might have engaged in witness tampering or fabricating evidence before trial, including transcripts of jail telephone calls with Bobbie Jo Lewis, preparing an affidavit for Ms. Lewis to recant her accusation and driving her to a notary to sign it, and transferring funds to the jail accounts of his fellow detainees who testified in Mr. Rowe's defense. ECF 17-3 at 56-58; ECF 21-5 at 177-250; ECF 21-6 at 1-24; Trial Tr. 140-78, 184-97, 278-94. The Indiana courts had an ample basis to credit trial counsel's testimony over Mr. Rowe's testimony, and Mr. Rowe hasn't provided clear and convincing evidence to the contrary as required by 28 U.S.C. § 2254(e)(1).

None of the cases cited in Mr. Rowe's motion for the court to consider supplemental cases (ECF 34) persuade the court that the State courts made an unreasonable determination of fact. Therefore, the claim that trial counsel did not convey the plea offer is not a basis for habeas relief.

## CERTIFICATE OF APPEALABILITY

Under Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a

constitutional right by establishing "that a reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons explained in this order, there is no basis for encouraging Mr. Rowe to proceed further.

For these reasons, the court GRANTS the motion for supplemental cases (ECF 34); DENIES the amended habeas corpus petition (ECF 9); DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on January 12, 2022

s/ Robert L. Miller, Jr.  
JUDGE  
UNITED STATES DISTRICT COURT
